**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALFRED K. CLOKE, III,
Plaintiff,

vs.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,
Defendants.

Case No. 1:11-cv-677
Black, J.
Litkovitz, M.J.

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, proceeding pro se, filed the original complaint in this action against defendants United Brotherhood of Carpenters and Joiners of America (UBC), Bobby Yeggy and Douglas McCarron on October 14, 2011. (Doc. 3). Plaintiff subsequently filed an amended complaint on May 9, 2012, naming these defendants and adding as defendants Donald Crane[1], Todd Ruswinkle, Todd Weinbrecht, Keith Kistler, Bob Elliott, Jason Clark, E.J. Scheiderer, Jack Lamb, Buck Rector, Jerry Thornsberry, Millwrights and Pile Drivers Local Union 1090 (Local 1090), David Tharp, and the Indiana/Kentucky/Ohio Regional Council of Carpenters (IKORCC). (Doc. 32). The lawsuit arises out of the merger of several local unions, which plaintiff claims violated his rights under the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411 and 481, and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

This matter is before the Court on the following motions filed by plaintiff: (1) plaintiff's motion for additional time to file a response to defendants' answers to the amended complaint (Doc. 40); (2) plaintiff's motions to proceed to trial (Docs. 42, 49, 51), defendants UBC, Yeggy, and McCarron's motion to strike in part motion to proceed to trial (Doc. 55), plaintiff's motion to

withdraw motion to proceed to trial (Doc. 57), and defendants' response in opposition to plaintiff's motion to withdraw motion to proceed to trial (Doc. 61); and (3) plaintiff's motion to amend the complaint (Doc. 58), defendants' memoranda in opposition to the motion (Docs. 60, 61), and plaintiff's reply in support of his motion (Doc. 62).

The matter is also before the Court on (1) the motion to dismiss the amended complaint filed by defendants UBC, Yeggy and McCarron (Doc. 37), plaintiff's memorandum in opposition (Doc. 41), and defendants' reply (Doc. 47); and (2) the motion to dismiss the amended complaint filed by defendants UBC, Yeggy, and McCarron and newly-added defendants Crane, Ruswinkle, Weinbrecht, Kistler, Elliott, Clark, Scheiderer, Lamb, Rector, Thornsberry, Local 1090, Tharp, and the IKORCC (Doc. 46), plaintiff's memorandum in opposition (Doc. 52), and defendants' reply in support of their motion (Doc. 56).

## I. Plaintiff's amended complaint

Plaintiff makes the following allegations in support of his claims: On August 8, 2011, pursuant to § 6(A) of the UBC General Constitution[2], UBC General President McCarron dissolved the Ohio and Vicinity Regional Council of Carpenters (OVRCC) and merged it with the Indiana/Kentucky Regional Council of Carpenters (IKRCC), thereby forming the new Indiana/Kentucky/Ohio Regional Council of Carpenters (IKORCC). (Doc. 32, § 1, p. 6). This merger was accomplished by a "military style assault" on the OVRCC's offices in Cleveland,

---

[1] The amended complaint incorrectly identifies Donald Crane as "Dan Crane."

[2] The UBC General Constitution is attached as an exhibit to defendants' motion to dismiss. (Doc. 37, Exh. A). The Court may consider exhibits attached to a motion to dismiss so long as they are referred to in the complaint and are central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The UBC Constitution satisfies these criteria and may be considered by the Court. Section 6(A) of the Constitution states: "The United Brotherhood is empowered, upon agreement of the Local Unions and Councils directly affected, or in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the United Brotherhood and its members, locally or at large, to establish or dissolve any Local Union or Council, to merge or consolidate Local Unions or Councils, to establish or alter the trade or geographical jurisdiction of any Local Union or Council, to form Councils and to permit, prohibit or require the affiliation with or disaffiliation from any Council by any Local Union." (Doc. 37, Exh. A).

Ohio, in which all of the elected officers of the OVRCC were fired, and the IKRCC's officers were placed in control of the new IKORCC and of delegates appointed from the affected locals to the new IKORCC. (*Id.*, pp. 6-7). Defendants sent a notice to the membership dated August 10, 2011, following the merger. (*Id.*; Exh. 1)[3]. Section 6(A) of the UBC General Constitution does not specifically state that the reasons for this type of action by the General President are to be sent to the membership, but settled law required that plaintiff, as a member of Local 1066, be notified of the underlying reasons for the merger sufficiently in advance of its implementation so as to allow him to appeal the decision to the UBC General Executive Board. (*Id.* at 7-9).

On September 11, 2011, at the monthly meeting of Local 1066, it was verbally announced that Local 1066 was being merged with the other millwright locals in the area covered by the old OVRCC. (*Id.*, § 2, p. 11). Plaintiff subsequently learned that defendant Yeggy, Midwest Vice-President of the UBC, had informed union officers that the locals were to be merged as of November 1, 2011. (*Id.*, pp. 11-12). Plaintiff filed for an injunction in this court on September 28, 2011. (*Id.*, p. 12). The merger took place before defendants were served with notice of the request for the injunction. (*Id.*). Plaintiff requested a copy of the reports that led to the merger from McCarron on November 28, 2011, but received no response. (*Id.*; Exh. 7). McCarron has acted in a "patently unreasonable" manner by failing to allow for an appeal to the General Executive Board of his decision to allow the merger before proceeding with the action. (*Id.*, § 11, pp. 22-25).

Defendant Yeggy, under McCarron's direction, seized the funds of Local 1066 as part of

---

[3] Plaintiff has attached a number of exhibits to the amended complaint. The Court may consider the attached exhibits so long as they are referred to in the amended complaint and are central to plaintiff's claims. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

the merger. (*Id.*, § 12, p. 25). The funds included a death benefit fund, which was an insurance plan that each participating member paid into on a monthly basis with the guarantee of a benefit being paid to the member's family upon the member's death, and which was backed by the full general fund. (*Id.*). When the death benefit fund was low, funds from the general fund were transferred into it, such that the entire general fund of Local 1066 was a death benefit fund, if needed. (*Id.*, p. 26).

At the regularly scheduled meeting of the membership of Local 1066 on October 3, 2011, the membership reauthorized a number of expenditures, including a Christmas party, the retirees' club quarterly luncheon, and the purchase of two apprentice rings for longtime instructors. (*Id.*, § 3, p. 13). The membership also authorized the sealed bid sale of a pool table and furniture. (*Id.*; Exh. 8). The funds of Local 1066 were seized without regard to the votes of the membership, following which only the sale of the pool table and furniture were allowed and the other expenditures were cancelled. (*Id.*, p. 14). Also, after the merger of Local 1066 into Local 1090, the dues of the members of Local 1066 were increased without a vote by the members or notification to them and the dues of the retiree members were also increased without a vote. (*Id.*, § 4, p. 15; Exh. 10). Plaintiff used his internal remedies under § 53(G) of the UBC Constitution[4] to challenge the increase, but he did not receive a reply. (*Id.*, Exh. 18).

The merger has resulted in an assessment on plaintiff as a member because he must travel long distances in order to attend Local meetings, including 8 hour round-trips between Cincinnati

[4] Section 53(G) states that, "any member . . . having any grievance may appeal to the General President within thirty (30) days from the date the grievance occurred. . . . All grievances . . . shall be in writing and shall contain a brief statement of the grounds relied upon. Decisions of the General President on grievances may be appealed to the General Executive Board, whose decision shall be final. Also, decisions of the General Executive Board in all cases involving geographical jurisdiction, mergers, consolidations, and formations of Councils shall be final." Section 53(H) provides: "All appeals of decisions of the General President . . . must be filed with the General Secretary-Treasurer within thirty (30) days from the date of the receipt of the General President's decision[.] Section 53(J) provides, "All members . . . are required to exhaust the administrative remedies provided in this Section before commencing proceedings in any court or any agency provided by law."

and Cleveland, with only two of 12 meetings per year scheduled to be held in the Cincinnati area. (*Id.*, § 5, p. 15; Exh. 9).

Defendants have levied a fee on the membership for the sending out of three-month notices without a required vote of the membership. (*Id.*, § 7, p. 17; Exh. 11). Further, an assessment of 30 cents per hour was levied on all members of the new Local 1090 without a vote by the membership. (*Id.*, § 8, p. 17; Exh. 19).

The merger of Local 1066 into Local 1090 is in effect a trusteeship. (*Id.*, § 6, p. 16). Six of the ten appointed members of the executive board of Local 1090 are full-time employees of the IKORCC. (*Id.*). They have been placed on the board by order of defendants to control the affairs of Local 1090 given that it would be unreasonable for any official whose full-time employment is governed by an at-will contract with defendants to oppose his employer's will and risk discipline or termination. (*Id.*).

Although the IKORCC is composed of 32,000 members, the officers of the IKORCC are the same officers who were selected by the 12,000 members of the old IKRCC the month before the merger and who represented only that organization. (*Id.*, § 9, p. 18). McCarron has chosen not to hold new elections that would allow for the possibility that all members of the new IKORCC would be truly represented because he does not want to take the chance that the officers he "hand-picked" before the merger would not be re-elected if all members of the IKORCC were permitted to vote as required under the applicable law. (*Id.*).

Defendants committed acts of bad faith in connection with the merger. (Doc. 32, § 10, pp. 19-20; Exh. 6). Plaintiff contends there is contradictory evidence as to when McCarron made the decision to implement the merger. Plaintiff further disputes that a copy of McCarron's letter directing the merger was provided to Local Union 1066, as stated in an affidavit Yeggy filed

with this Court. (*Id.*, p. 20; Exhs. 6, 14). Plaintiff further alleges that defendants acted in bad faith by making statements at the Local 1066 monthly meeting in October that were meant to intimidate members and deny them their rights. (*Id.*, p. 21; Exh. 5). Specifically, at the meeting, Yeggy "cited past instances where out of the normal spending was done and those who signed checks were held responsible." (*Id.*, Exh. 5, Declaration of Ivan D. Madden).

As relief, plaintiff seeks actual damages of $5,000 and punitive damages in the amount of $9,000,000 to discourage the continued disregard of his rights as a union member. (*Id.*, § 14, p. 28).

**I. Motion for additional time (Doc. 40).**

Plaintiff filed an amended complaint on May 7, 2012. (Doc. 32). He subsequently filed a motion for extension of time on May 22, 2012, seeking an extension of 21 days after all of the defendants answered the amended complaint, or after their time to answer had expired, to respond to their answer. The defendants named in the original complaint filed a motion to dismiss the amended complaint on May 18, 2012. (Doc. 37). Plaintiff filed a memorandum in opposition to the motion to dismiss on June 8, 2012. (Doc. 41). The individuals added as new defendants to the amended complaint filed a motion to dismiss the amended complaint on June 22, 2012. (Doc. 46). Plaintiff filed a memorandum in opposition to that motion to dismiss on July 3, 2012. (Doc. 50). Accordingly, plaintiff's motion for additional time to respond to defendants' answer to the amended complaint (Doc. 40) is DENIED as moot.

**II. Plaintiff's motion to proceed to trial (Doc. 49), defendants' motion to strike (Doc. 55), and plaintiff's motion to withdraw (Doc. 57).**

Plaintiff has filed a combined memorandum in opposition to defendants' motion to dismiss the amended complaint and a motion to proceed to trial. (Doc. 49). Defendants UBC,

Yeggy, and McCarron move the Court to strike the memorandum portion of plaintiff's filing on the ground that the memorandum is actually an impermissible sur-reply to defendants' reply in support of their motion to dismiss plaintiff's amended complaint, which defendants filed on May 7, 2012 (Doc. 37). (Doc. 55).

Plaintiff filed a response in opposition to the motion to dismiss on June 8, 2012 (Doc. 41) and defendants filed their reply in support of the motion to dismiss on June 22, 2012 (Doc. 47). Plaintiff filed his "Motion to Proceed to Trial and Reply to Defendants UBC, McCarron & Yeggy Second Motion to Dismiss" on July 3, 2012. (Doc. 49). Plaintiff has confirmed in his response to defendants' motion to strike in part the motion to proceed to trial that document 49 is intended as a reply to defendants' motion to dismiss. (Doc. 57). He asks that the memorandum be permitted to remain in the record and that only the portion of the document that refers to a motion to proceed to trial be withdrawn. However, the Local Rules allow only for the filing of a motion, an opposing memorandum, and a reply memorandum with no additional memoranda permitted "except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Plaintiff did not obtain leave of court to file a sur-reply and he has not shown good cause for filing the same. Accordingly, defendants' motion to strike plaintiff's reply memorandum in part (Doc. 55) is GRANTED. Plaintiff's motion to proceed to trial and memorandum (Doc. 49) will be stricken from the record. Plaintiff's motion to withdraw his motion to proceed to trial (Doc. 57) is DENIED as moot.

**III. Plaintiff's motion to amend the complaint (Doc. 58).**

Plaintiff filed a motion for leave to file a second amended complaint on July 24, 2012. (Doc. 58). In support of the motion, plaintiff states only as follows: "Additional actions have come to light out of the same action of the defendants and must be added most noteably [sic] the

U.S. Department of Labor Decision cited in #12 in the amended complaint and the Elections held in Local #1090 as described in #14 of the complaint." (*Id.*, p. 2).

Defendants oppose plaintiff's motion. (Docs. 59, 60). They argue that plaintiff has filed a large number of motions in this case; he has filed two previous motions to amend the complaint; and he should not be permitted to file a second amended complaint at this stage of the case given there are two fully-briefed motions to dismiss that are pending. Defendants further argue that although plaintiff is proceeding pro se, he is a relatively sophisticated and experienced litigator who is required to comply with federal pleading requirements. Defendants contend that plaintiff has failed to show how his proposed amended complaint corrects any of the deficiencies identified in the pending motions to dismiss. Defendants assert that the two supplemental occurrences plaintiff alludes to in his memorandum in support of his motion to amend, which defendants identify as (1) a Department of Labor decision that dismissed plaintiff's complaint to that agency, and (2) a complaint concerning Local 1090 elections that plaintiff filed with the Department of Labor, do not support the filing of a second amended complaint in the face of the pending motions to dismiss. (Doc. 59 at 7-8).

In reply, plaintiff contends that the amended complaint addresses facts that were not known to him when the original complaint was filed. (Doc. 62). He asserts that the amended complaint addresses the objections raised by the new party defendants in their motion to dismiss. Plaintiff further contends that defendants only suggest that he has acted with undue delay and they do not assert that the proposed amended complaint is futile, that he is acting in bad faith, or that they would suffer unfair prejudice if he were granted leave to amend the complaint.

Although leave to amend should be freely given under Fed. R. Civ. P. 15(a)(2) "when justice so requires," plaintiff's motion for leave to amend the complaint should be denied under

the circumstances of this case. First, this matter had been pending for nearly ten months, plaintiff had previously been granted leave to amend the complaint, and both parties had filed motions to dismiss the amended complaint before plaintiff sought leave to file yet another amended complaint. The motions to dismiss are fully briefed and are ready to be decided by the Court. For the reasons discussed below, the undersigned recommends that the motions be granted and that plaintiff's claims set forth in the amended complaint be dismissed for failure to state a claim upon which can be granted pursuant to Fed. R. Civ. P. 12(b)(6). While plaintiff's pleadings are entitled to a liberal construction, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), the proposed second amended complaint does not cure the deficiencies in the amended complaint that warrant dismissal of his claims. Specifically, plaintiff has not included allegations to show that he has exhausted his internal union remedies for his claims against the new party defendants as required under the UBC Constitution and federal law. Furthermore, while plaintiff includes allegations in the proposed second amended complaint pertaining to the Department of Labor's disposition of a complaint he filed challenging the merger and the failure of the IKORCC to elect new officers (Doc. 58, Exh. 22), the decision does not demonstrate that plaintiff should be permitted to proceed on his claims against any defendant. The Department of Labor dismissed plaintiff's complaint, finding that the merger did not result in the creation of a new labor organization and it therefore was not necessary for the IKORCC to hold officer elections at that time. Thus, the decision does not, as plaintiff alleges, "clearly show[] the intent of McCarron and the UBC was to keep the IKRCC officers in control of the IKORCC and not to have a legally elected democratic IKORCC." (Doc. 58, § 12, p. 30). Finally, plaintiff's allegations concerning the scheduling of a meeting in South Point, Ohio in May 2012, which he presents for the first time in the proposed second amended complaint (*Id.*, § 14, pp. 30-32; Exh. 24) fail to

state a plausible claim for relief for the reasons discussed in connection with defendants' motion to dismiss the amended complaint. Accordingly, the proposed amendment would not cure the defects in the amended complaint and would be futile. *See Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Plaintiff should be denied leave to file a second amended complaint.

**IV. Motion to dismiss by defendants UBC, McCarron and Yeggy (Doc. 37)**

To survive a Rule 12(b)(6) motion to dismiss, plaintiff's amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-settled that a document filed pro se is "to be liberally construed," and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). Courts are not required to devote time to a case when the nature of a pro se plaintiff's claim "defies comprehension." *Roper v. Ford Motor Co.*, No. 1:09cv427, 2010 WL 2670827, at *3 (S.D. Ohio April 6, 2010) (citing *Jones v. Ravitz*, No. 07-10128, 2007 WL 2004755, at *2 (E.D. Mich. Feb. 22, 2007)).

Upon review of the allegations of the amended complaint, it is apparent that plaintiff has not stated a claim for violation of his federal statutory rights against any named defendant. The Court will address each of plaintiff's claims in turn.

**a. Sections 1, 2, 11**

Plaintiff alleges in §§ 1 and 2 of the amended complaint that defendants violated § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by failing to give notice of the reasons for the dissolution of the OVRCC and its merger with the IKRCC sufficiently in advance of the merger's effective date to allow him, as a member of Local 1066, to pursue an appeal to the General Executive Board. Plaintiff further alleges in § 11 that defendants violated his rights to free speech and to participate as a member in the union by instituting the merger without allowing him time to pursue an appeal of the decision to the General Executive Board. Defendants contend that the claims presented in §§ 1 and 2 of the amended complaint must be dismissed for failure to state a claim for violation of § 301 of the LMRA. Defendants contend that pursuant to § 6(A) the UBC Constitution, the UBC General President clearly has the authority to direct the dissolution and merger of subordinate bodies. (Doc. 37 at 11, citing cases). Defendants assert that the UBC Constitution contains no requirement that the union membership be given advance notice of such a decision by the General President. (Doc. 37 at 11-16). In addition, defendants contend that plaintiff had the opportunity to appeal the decision to dissolve Local Union 1066 and merge it with other millwright locals to the UBC General Executive Board following the merger, but plaintiff failed to so. Defendants contend that the cases plaintiff relies on in the amended complaint to establish that the UBC Constitution requires notice before a merger is implemented do not establish that proposition.[5] Defendants contend

[5] Plaintiff concedes in the amended complaint that Section 6(A) does not, by its terms, require that the General President notify the membership in advance of the reasons for a merger, but he alleges case precedent establishes

that because they did not violate any provision of the UBC Constitution by failing to give notice of the dissolution and merger decision prior to implementation of the decision, plaintiff's claims asserted under §§ 1 and 2 of the amended complaint must fail. Defendants argue that plaintiff's claim asserted in § 11 of the amended complaint that McCarron acted in a "patently unreasonable" manner by implementing the merger without allowing time for an appeal must be dismissed because plaintiff appears to offer this claim only as additional support for the § 301 claims asserted in §§ 1 and 2 of the amended complaint.

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides that suits for violations of contracts between labor organizations may be brought in the district courts. A union constitution is a contract between labor organizations under § 301. *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334,* 452 U.S. 615, 619-20 (1980). Accordingly, the UCB Constitution is a contract under § 301, and suit may be brought for a violation of the Constitution's provisions.

Section 6(A) of the UBC Constitution authorizes the UBC General President, in his discretion, to dissolve or to merge local unions when the General President "finds that it is in the best interests of the United Brotherhood and its members, locally or at large. . . ." (Doc. 37, Exh. A). Any such decision is subject to an appeal to the General Executive Board. (*Id.*). The UBC Constitution includes no requirement that notice or reasons for the merger be given in any manner or in accordance with a particular timeframe. (*Id.*).

Plaintiff has failed to state a claim under § 301 of the LMRA based on defendants' failure to give him sufficient notice of the dissolution and merger of Local 1066 so as to allow him to

---

this is the correct interpretation of the provision. (*See* Doc. 32, § 1, pp. 7-9, citing *Local 567 of the United Brotherhood of Carpenters and Joiners of America v. Sidell*, 552 F.2d 1250 (7th Cir. 1977); *Local Union No. 48 of the United Brotherhood of Carpenters and Joiners of America v. United Brotherhood of Carpenters and Joiners of*

appeal the merger prior to its implementation. Plaintiff acknowledges that defendant McCarron had the right as UBC General President to invoke § 6(A) of the UBC Constitution to effectuate a merger, so long as he acted in the best interests of the union membership. (Doc. 41 at 3). Plaintiff has failed to point to any provision of the UBC Constitution that required McCarron as General President to provide notice of the merger to the membership sufficiently in advance of its implementation to allow for an appeal by a member to the General Executive Board prior to completion of the merger. The cases plaintiff relies on in his amended complaint in support of his § 301 claim do not establish that the UBC Constitution has been interpreted by the courts to require notice to the membership before a merger is implemented. *See Sidell*, 552 F.2d at 1256; *Local Union No. 48*, 920 F.2d 1047; *Millwright Local #1079*, 878 F.2d 960. To the contrary, the court in *Sidell* indicated that the UBC General President is not required to give reasons for a decision he makes pursuant to the discretionary authority vested in him under § 6(A) of the UBC Constitution. *See Sidell*, 552 F.2d at 1256 (noting the "disjunctive phraseology" of Section 6(A)). Finally, the Court notes that although plaintiff indicates it would have been futile for him to file an appeal once the merger had been completed, he alleges no facts in support of this allegation.

For these reasons, plaintiff's § 301 claims asserted in §§ 1 and 2 of the amended complaint should be dismissed for failure to state a claim for relief. Plaintiff's claim asserted in § 11 that McCarron acted in a "patently unreasonable" manner by implementing the merger without allowing sufficient time for an appeal should likewise be dismissed.

---

*America*, 920 F.2d 1047 (1st Cir. 1990); *Millwright Local #1079 v. United Brotherhood of Carpenters and Joiners of America*, 878 F.2d 960 (6th Cir. 1989)).

**b. Sections 3, 4, 5, 7, 8**

Plaintiff alleges various violations of Title I of the LMRDA, 29 U.S.C. §§ 411(a)(2) and 411(a)(3)(A), in §§ 3, 4, 5, 7 and 8 of the amended complaint. Section 411(a)(2), "Freedom of speech and assembly," provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Section 411(a)(3)(A) states:

> Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except-- (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot. . . .

Plaintiff has failed to state a claim for relief under either one of these statutory provisions. First, plaintiff alleges in § 3 of the amended complaint that defendants violated his rights under § 411(a)(2) by not using the funds of Local 1066 for purposes that the members had approved by their vote at a meeting held on October 3, 2011, including the Local 1066 Christmas party, apprentice rings for two long-time instructors, and the retirees' club quarterly luncheon. (Doc. 32, § 3, pp. 13-14). Defendants state that Local 1066 ceased to exist as of November 1, 2011,

and the UBC disposed of the local's assets in accordance with § 30(A)[6] of the UBC Constitution. (Doc. 37 at 17). Plaintiff has failed to state a plausible claim for violation of his rights under § 411(a)(2) based on defendants' failure to make expenditures on behalf of Local 1066 following dissolution of the local and the merger. Accordingly, plaintiff's claim under § 411(a)(2) based on defendants' failure to make expenditures approved by members of Local 1066 should be dismissed.[7]

Plaintiff alleges in § 4 of the amended complaint that defendants violated §§ 411(a)(2) and (a)(3)(A) by increasing the dues of active and retired union members without either a vote by members or official notification to them. (*Id.*, § 4, p. 15). Plaintiff references an exhibit attached to the amended complaint in support of this claim (*Id.*, Exh. 9), which is a notice of a dues increase for members of Local 1090 effective December 1, 2011. Plaintiff alleges he exhausted his internal union remedies as to this claim. (*Id.*, Exh. 18). Defendants contend that this claim must be dismissed because these alleged acts occurred after the merger and plaintiff does not allege any direct involvement by them in the raising of the dues. (Doc. 37 at 17). In response, plaintiff contends that defendant UBC is responsible for all actions of its appointed officers in the absence of by-laws approved by the membership of the local union and officers elected in accordance with the by-laws. (Doc. 41 at 5).

The dues increase that plaintiff challenges as a violation of his rights under the LMRDA took place following the dissolution of Local 1066 and the merger ordered by defendant

[6] Section 30(A) provides that upon dissolution of a local union, "all Property, Books, Charter and Funds held by, or in the name of, or on behalf of said Local Union, or other subordinate body must be forwarded immediately to the General Secretary-Treasurer for such use or disposition in the interests of the membership of the United Brotherhood as the General President in the exercise of his or her discretion may direct or to such Local Union(s) or Council(s) as the General President in the exercise of his or her discretion may direct."

[7] Plaintiff alleges in his opposing memorandum that these same expenditures were voted on and approved by the membership "in attendance at the meeting held on March 20, 2012," but nonetheless did not occur. (Doc. 41 at 5). However, plaintiff failed to make this allegation in his amended complaint, which he filed on May 7, 2012, and this

McCarron. Plaintiff offers no factual or legal authority in support of his position that defendant UBC is responsible for any actions of the officers of Local 1099 taken following the merger. Because plaintiff's allegations related to the dues increase fail to state a plausible claim for relief against defendants, the claim asserted under the LMRDA in § 4 of the amended complaint should be dismissed.

Plaintiff claims in § 5 of the amended complaint that the merger of Local 1066 with the other millwright locals violated his rights under §§ 411(a)(2) and 411(a)(3)(A) because the scheduling of the local's monthly meetings in cities several hours' driving distance from Cincinnati, Ohio, greatly limits his right to meet freely with other members to express views, elect officers, and generally participate fully in the operation of his local union. (Doc. 32, § 5, pp. 15-16). Plaintiff contends that the scheduling of the meetings in other cities has had the effect of placing an assessment on him. (*Id.*). In support of this claim, he has submitted the 2012 schedule for Local 1090 meetings, which shows the local will hold 12 meetings in six cities in Ohio, including two in Cleveland and two in Cincinnati. (*Id.*, Exh. 9). Plaintiff alleges he has exhausted his internal union remedies for this claim. (*Id.*, Exh. 21).

Defendants contend that plaintiff's allegations of harm made in connection with § 5 of the amended complaint are speculative. (Doc. 37 at 17). Defendants assert that plaintiff has not specifically alleged that he has not been able to vote in any election or attend any meeting. Defendants assert that similar allegations have been found insufficient to state a claim for relief under the LMRDA.

Plaintiff has not stated a plausible claim for relief under §§ 411(a)(2) and 411(a)(3)(A) based on the scheduling of the Local 1090 meetings. Plaintiff has not alleged that he will be

---

allegation is not properly raised for the first time in his response to the motion to dismiss. The Court therefore declines to address this allegation.

precluded from participating in the meetings as a result of the rotating locations. Nor has plaintiff made allegations which, if accepted as true, show that the schedule will hinder his right to vote in any election. Plaintiff's allegation that some monthly meetings will be held several hours' driving distance from his home are insufficient, standing alone, to show that plaintiff has been deprived of any rights guaranteed under § 411(a)(2) or § 411(a)(3)(A) as a result of the merger. *See Millwright Local #1079*, 878 F.2d at 963-64 (rejecting as speculative and unsupported local's allegations that attempted reorganization would burden its members' voting rights simply because its members would have to travel 150 miles to Cleveland, Ohio, to exercise those rights where the evidence showed the meeting locations were rotated among the district's offices in some districts and in other districts, mail-in ballots were used to facilitate voting). Accordingly, plaintiff's claim set forth in § 5 of the amended complaint should be dismissed for failure to state a claim for relief.

Plaintiff alleges in §§ 7 and 8 of the amended complaint that defendants violated § 411(a)(3)(A) by levying certain fees and assessments without a vote by the membership, including a fee for sending out three-month notices (Doc. 32, § 7; Exh. 11) and a 30 cent per hour market recovery fund assessment. (*Id.*, § 8, p. 17; Exh. 19). Defendants contend that plaintiff does not make any allegations to show that they can be held liable for these alleged violations, which occurred following the merger. (Doc. 37 at 18). Plaintiff asserts in response that defendants are responsible for the actions of their appointed officers. (Doc. 41 at 7).

Plaintiff does not cite any factual or legal support to show that defendants can be held liable for actions taken by the officers of Local 1090 following the dissolution of Local 1066 and the merger. Accordingly, his claims asserted in §§ 7 and 8 of the amended complaint should be dismissed for failure to state a plausible claim for relief against defendants.

**c. Section 6**

Plaintiff claims that the merger of Local 1066 into Local 1090 is in effect a trusteeship which should be governed by Title III of the LMRDA. (Doc. 32, § 6, p. 16). Defendants contend that plaintiff has not offered sufficient allegations to support this claim. (Doc. 37 at 18-19). Defendants contend that General President McCarron made the appointments pursuant to his authority under § 10(M) of the UBC Constitution, which authorizes the General President to "appoint interim officers and delegates of newly established, consolidated or merged Local Unions or Councils." (Doc. 37, Exh. A). In response, plaintiff appears to allege that the IKORCC and Local 1090 stand in a trustee relationship to one another because all of the officers of the "new" Local 1090 are appointees of defendant McCarron and the majority are full-time employees of the IKORCC; as such, the officers are also purportedly employees of the UBC by virtue of the merger of the IKRCC and the OVRCC. (Doc. 41 at 8-9). Plaintiff asserts a "de facto" trusteeship exists under 29 U.S.C. § 462 by virtue of the merger of the IKRCC and the OVRCC.

Title 29 U.S.C. § 462 provides as follows:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

Title 29 U.S.C. § 402(h) defines a "trusteeship" as "[a]ny receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."

According to the allegations of the complaint, defendants did not suspend the autonomy of Local 1066. Rather, Local 1066 was dissolved and effectively merged with the other locals of the OVRCC. Thus, the allegations of the complaint demonstrate no trusteeship existed within the meaning of the LMRDA. *See United Broth. of Carpenters & Joiners of Am., Dresden Local No. 267 v. United Broth. of Carpenters & Joiners of Am., S. Cent. Ohio Dist. Council*, 992 F.2d 1418, 1425 (6th Cir. 1993) (there was no trusteeship within the meaning of the LMRDA where the UBC dissolved the local and effectively merged it with the other locals of the Council). Even assuming there was a trusteeship, plaintiff has not asserted a cause of action under Title III for violation of his rights in connection with the establishment of a trusteeship. Plaintiff's claim under Title III should therefore be dismissed for failure to state a claim for relief.

**d. Section 9**

Plaintiff alleges in § 9 of the amended complaint that defendants are violating Title IV of the LMRDA by denying him the right to be represented by delegates nominated and elected by members of the "old OVRCC area." (Doc. 32, § 9, p. 18). Plaintiff alleges that defendants have effectively left him and other members of the "new" IKORCC without elected officers because McCarron has not held new elections following the merger, instead keeping in place the officers of the former IKRCC. (*Id*). Plaintiff indicates that elections must be held pursuant to 29 U.S.C. § 481. Plaintiff has attached two exhibits to the amended complaint in support of this claim. (Doc. 32, Exhs. 12, 13). The first is a grievance dated November 14, 2011, that plaintiff filed with defendant McCarron under § 53(G) of the UBC Constitution, asserting that elections should be held for delegates to ratify the new by-laws of the "new Council." (*Id*., Exh. 12). The second is McCarron's response informing plaintiff that the IKORCC rejected plaintiff's contention that elections should be held and stating that the IKORCC was not a "new" council but only reflected

a name change of the IKRCC following the merger, such that elections for officers and delegates to the regional council was not required. (*Id.*, Exh. 13).

Defendants move to dismiss plaintiff's claim because they contend that even if the IKORCC is a new council, there is no private right of action to enforce Title IV in these circumstances. (Doc. 37 at 20). Plaintiff does not address this specific claim in his opposing memorandum.

Section 481(b) provides that a local labor organization shall elect its officers at least once every three years. 29 U.S.C. § 482(a)(1) provides that a member of a labor organization who has exhausted his internal union remedies may file a complaint with the Secretary of Labor. The Secretary is empowered to bring a civil action in the district court. 29 U.S.C. § 482(b). However, there is no provision under § 482 for a private individual to bring a cause of action under the statute. Accordingly, plaintiff is not authorized to bring an action under this provision. The claim brought under 29 U.S.C. § 482 should be dismissed.

**e. Section 10**

Plaintiff alleges in § 10 of the amended complaint that defendants acted in bad faith by misrepresenting when the decision to dissolve the local unions and implement the merger was made; by making misrepresentations to the Court as to whether a letter advising Local 1090 of the merger had been sent; and by intimidating members of Local 1066 by advising them that those responsible for out-of-the-ordinary expenditures would be held responsible for the spending. (Doc. 32, § 10, pp. 19-22). Defendants contend that plaintiff does not allege how such instances of bad faith impact the causes of action asserted in the complaint and that plaintiff's allegations, even accepted as true, do not show bad faith by defendants in implementing the merger. (Doc. 37 at 7-8).

In response, plaintiff contends that a union's action, even if arguably authorized under its governing documents and not patently unreasonable, may still be blocked by the court if undertaken in bad faith. (Doc. 41 at 11, citing *Local 48, United Brotherhood of Carpenters & Joiners of Am. v. United Brotherhood of Carpenters & Joiners of Am.*, 920 F.2d 1047 (1st Cir. 1990) (and cases cited therein). Plaintiff contends that defendants committed acts of bad faith that continued after the merger. Although plaintiff's arguments are not entirely clear, plaintiff appears to allege that defendants violated § 25(B)[8] of the UBC Constitution by permitting elections to take place for new officers of Local 1090 when bylaws were not in place. Plaintiff also appears to repeat his arguments made in support of his claim under 29 U.S.C. § 481 in claiming that defendant McCarron acted in bad faith by ordering the merger and appointing interim delegates from only the IKRCC to the IKORCC. Plaintiff alleges that McCarron acted with the improper intent of (1) depriving plaintiff as a member of the majority in the IKORCC of his right under the LMRDA to elect the officers of the IKORCC, and (2) maintaining the officers of the IKRCC instead of allowing the majority to democratically elect the officers of the IKORCC. Plaintiff alleges that the proper procedure for a merger and the correct interpretation of the union constitution is set forth in *United Broth. of Carpenters & Joiners of Am., Dresden Local No. 267*, 992 F.2d 1418, where: (1) formal notice of the reorganization was sent to all the local unions and district councils; (2) the letter providing the notice simultaneously dissolved the old council and created the new council; (3) the newly-created council was governed by temporary delegates until a future date; and (4) officers and temporary delegates to the new council were sworn in and temporary by-laws were approved pending the election of permanent delegates by the local unions. (Doc. 41 at 12-13). Moreover, plaintiff cites additional evidence

[8] Section 25(B) of the UBC Constitution states that "Local Unions shall be governed by applicable uniform bylaws and have the power to make laws and trade rules which in no way conflict with the Constitution and Laws of the

of bad faith that he did not reference in the amended complaint, specifically, an "LM-2 form" filed on behalf of the OVRCC in September 2011 by David Tharp and Michael Lauer. (*Id.* at 15; Exh. 5). Plaintiff alleges that the form contains information that is "less than accurate or complete." (*Id.*).

"There is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *United Broth. of Carpenters & Joiners of Am., Dresden Local No. 267*, 992 F.2d at 1425 (citing *Local No. 48, United Brotherhood of Carpenters v. United Brotherhood of Carpenters,* 920 F.2d at 1051). Nonetheless, plaintiff correctly notes that federal courts have held that "a union's action, though arguably authorized by, and not patently unreasonable under, its governing documents, may still be blocked by the courts if undertaken in bad faith" and "when clearly necessary to protect members' federally assured rights." *Local No. 48, United Broth. of Carpenters & Joiners of Am.,* 920 F.2d at 1053 (collecting cases).

Initially, the Court will not consider the "LM-2" form plaintiff has attached to his opposing memorandum because plaintiff made no allegations pertaining to this document in the amended complaint. Plaintiff's remaining allegations, accepted as true, fail to demonstrate that it is necessary to block any action by these defendants or to otherwise intervene in internal union affairs in order to protect plaintiff's federally guaranteed rights. Accordingly, plaintiff has failed to state a plausible claim for relief in § 10 of the amended complaint based on actions purportedly taken by defendants in bad faith.

---

United Brotherhood. . . ."

**f. Section 12**

Plaintiff claims in § 12 of the amended complaint that defendants violated their fiduciary obligations under 29 U.S.C. § 501 and the criminal provision of that statute, § 501(c), by canceling a death benefit fund that plaintiff and other members of the local paid into with the guarantee of a benefit being paid to their families upon their deaths. (Doc. 32, § 12, pp. 25-27). Plaintiff contends that defendants illegally diverted death benefits funds and used them for an unintended purpose when they transferred the funds under § 30 of the UBC Constitution.[9] (Doc. 41 at 9-10).

Defendants move to dismiss this claim on the ground that plaintiff does not have standing to bring a criminal action under 29 U.S.C. § 501(c). (Doc. 37 at 20). Moreover, defendants contend that even if there were a private cause of action under § 501, an action cannot be brought against defendants Yeggy and McCarron under the terms of the statute because plaintiff does not allege that either individual is an officer or individual employed directly or indirectly by Local 1066. (*Id.*). Finally, defendants argue that the funds in issue were lawfully transferred to Local 1090 pursuant to the provisions of § 30(A) of the UBC Constitution. (*Id.*, citing *325 Bleecker, Inc. v. Local Union No. 747*, 500 F. Supp.2d 110, 122 (N.D. N.Y. 2007) (upholding UBC General President's exercise of his authority under § 30(A) to transfer funds of dissolved local to merged local); *UFCW Local 911 v. United Food and Commercial Workers Union,* 301 F.3d 468, 475 (6th Cir. 2002) ("§ 501 violations generally involve 'unreasonable and arbitrary actions' such as 'self-dealing or the misuse of union funds.'")).

[9] Plaintiff asserts that the Court has already granted him leave to bring a claim against defendants under § 501. (Doc. 41 at 9). Although the Court granted plaintiff leave to amend the complaint to add a claim under § 501, the Court did not address whether plaintiff had stated a claim to relief under that statutory provision. (*See* Doc. 30 at 5-6).

Title 29 U.S.C. §501(a) states as follows:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. . . .

Subsection (c) states:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both

Plaintiff has failed to state a claim for a violation of § 501(c). First, plaintiff has not cited any authority to show there is a private right of action under that provision. Second, plaintiff has not alleged any facts to support a claim that defendants embezzled, stole, or unlawfully converted the death benefit funds to their own use.

Second, plaintiff has failed to state a plausible claim for a violation of § 501(a). Plaintiff has cited no facts or legal authority to support a claim that defendants violated the trust of the members of Local 1066 in connection with their handling of the death benefit funds. Plaintiff's claim brought under § 501 should be dismissed.

**V. New party defendants' motion to dismiss (Doc. 46)**

This matter is also before the Court on a motion to dismiss the complaint filed by the parties named for the first time in the amended complaint. These defendants are Donald Crane, Todd Ruswinkle, Todd Weinbrecht, Keith Kistler, Bob Elliott, Jason Clark, E.J. Scheiderer, Jack Lamb, Buck Rector, Jerry Thornsberry, Millwrights and Pile Drivers Local Union 1090 (Local 1090), David Tharp, and the Indiana/Kentucky/Ohio Regional Council of Carpenters (IKORCC) (collectively, "new party defendants"). The new party defendants move to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants Crane, Ruswinkle, Weinbrecht, Kistler, Elliott, Clark, Scheiderer, Lamb, Rector, Thornsberry, Tharp and the IKORCC argue that the amended complaint must be dismissed as to them because it includes no allegations that they violated federal law and seeks no relief from them. (*Id.* at 7-9). Defendant Local 1099 contends that plaintiff has failed to exhaust his internal union remedies as to any claim against it as required under § 53(J)[10] of the UCB Constitution and federal law. (*Id.* at 9-10).

In response, plaintiff does not dispute that he is required to exhaust his internal union remedies. (Doc. 52 at 2). However, he contends that he filed grievances with General President McCarron pertaining to his claims at least four months before he filed the amended complaint, and the grievances have either gone unanswered or were answered outside the prescribed waiting period. (Doc. 52 at 2).

In addition, plaintiff acknowledges that the "claims in the amended complaint are directed almost entirely at the UBC defendants with the exceptions of #4, #5, #7 [and] #8 of the amended complaint." (*Id.* at 3). In an effort to clarify the extent to which those particular

[10] Section 53(J) requires a member to exhaust all administrative remedies provided in Section 54 of the UBC Constitution before commencing proceedings in any court. (Doc. 37, Exh. A).

allegations are directed at the new party defendants, plaintiff asserts that § 4 of the amended complaint clearly identifies the new party defendants and specifically charges them with a violation of 29 U.S.C. § 411(a)(3)(A) by referencing Exhibit 18 to the amended complaint. (*Id.*). Exhibit 18 is a grievance filed with defendant McCarron in which plaintiff states: "My grievance is that you have allowed unelected officers of the new merged Local 1090 to raise the monthly dues of the members." The grievance is not addressed to any other individuals or entities. Plaintiff asserts that the new party defendants are the appointed officers cited in Exhibit 21, which is referenced in § 5 of the amended complaint, and the violations of federal law allegedly committed by these defendants are those described in § 5. (*Id.* at 4). Exhibit 21 is a grievance addressed only to defendant McCarron in which plaintiff states: "My grievance is that you have failed to protect the vested rights of the members under Sec.6A. . . ." The only reference to appointed officers in the grievance is a statement by plaintiff that a meeting could be cancelled if attendance at any location did not satisfy the appointed officer's standards. (*Id.*). Plaintiff asserts that § 8 of the amended complaint cites Exhibit 19, which states "'you have allowed unelected officers of the new IKORCC' that would be new party defendants David Tharp and the IKORCC." (*Id.*). Exhibit 19 is a grievance addressed only to defendant McCarron. Finally, § 7 of the amended complaint concerns a notice sent to plaintiff by defendant Kistler in his capacity as Financial Secretary advising plaintiff that a $5.00 fee would be added to his record if a three-month notice had to be sent to him for delinquent dues. (Doc. 32, Exh. 11). Plaintiff contends that the new party defendants are responsible for the alleged violations identified in these portions of the amended complaint and that these defendants are clearly identified in the amended complaint.

Liberally construed, the allegations of the amended complaint fail to state a claim for relief against the new party defendants. First, it does not appear that plaintiff filed any grievances pertaining to the new party defendants. Instead, the only grievances cited in connection with §§ 4, 5, 7 and 8 of the amended complaint pertain to actions taken by defendant McCarron in his capacity as General President. Generally, a union member must exhaust his internal union remedies before filing suit in federal court. *Holmes v. Donovan*, 984 F.2d 732, 738 (6th Cir. 1993). *See also Clayton v. International Union, UAW,* 451 U.S. 679, 688 (1981) (exhaustion policy is based on deferring judicial consideration of disputes arising over internal union matters such as those involving the interpretation and application of a union constitution). Because it does not appear that plaintiff exhausted his internal union remedies with respect to his claims against any of the new party defendants, he cannot pursue his claims against these defendants in federal court.

Furthermore, even if plaintiff had exhausted his internal union remedies against the new party defendants, plaintiff has not pled facts that would suffice to give any of these defendants notice of the claims against them. Simply citing to exhibits that mention one or more of the defendants indirectly or by name is not sufficient to put them on notice of the statutory violations charged against them or the alleged conduct that forms the basis for plaintiff's claims. Plaintiff does not make allegations against the new party defendants in the amended complaint such as would allow the court to draw the reasonable inference that any of these defendants is liable for the statutory violations asserted in the amended complaint. *See Twombly*, 550 U.S. at 556. For these reasons, the complaint against the new party defendants should be dismissed.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion for additional time (Doc. 40) is **DENIED** as moot.

2. Defendants' motion to strike plaintiff's reply memorandum in part (Doc. 55) is **GRANTED** and plaintiff's motion to proceed to trial (Doc. 49) is **STRICKEN** from the record.

3. Plaintiff's motion to withdraw his motion to proceed to trial (Doc. 57) is **DENIED** as moot.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's motion to amend the complaint (Doc. 58) be **DENIED.**

2. Defendants UBC, McCarron and Yeggy's motion to dismiss the amended complaint (Doc. 37) be **GRANTED.**

3. The new party defendants' motion to dismiss the amended complaint (46) be **GRANTED**.

4. Plaintiff's motions to proceed to trial (Docs. 42, 51) be **DENIED** as moot.

5. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

Date: 2/15/13

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALFRED A. CLOKE, III,
Plaintiff

Case No. 1:11-cv-677

Black, J.
Litkovitz, M.J.

vs

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,
Defendants

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Alfred K Cloke, III
621 Neptune Way
Cinti, OH 45244

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( *Printed Name*)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*
7011 3500 0001 5345 5222

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540